UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 17-7464 JGB (JPRx)** | Date | November 30, 2017 |
| Title | *Lisa Canales v. Performance Food Group, Inc.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order (1) DENYING Plaintiff's Motion to Remand (Dkt. No. 12); and (2) VACATING the December 4, 2017 Hearing (IN CHAMBERS)

Before the Court is Plaintiff Lisa Canales' Motion to remand. ("Motion," Dkt. No. 12). The Court finds this Motion appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of, and in opposition to, the Motion, the Court DENIES the Motion. The Court VACATES the December 4, 2017 hearing.

## I. BACKGROUND

On August 30, 2017, Plaintiff filed this action against her former employer Defendant Performance Food Group, Inc. ("Performance Food") in the Superior Court for Los Angeles County. ("Complaint," Dkt. No. 1-1.) Plaintiff alleges she suffered from severe migraines throughout her employment and would occasionally miss work due to the pain. (Compl. ¶ 14.) Plaintiff also claims she was laughed at by Defendant's agents when she experienced a migraine and that they accused her of lying about her condition. (Id.) Around October 2016, Canales received a notice of settlement and claim form pursuant to a class action settlement regarding Performance Food. (Id. at ¶ 18.) Canales claims she asked Shelly Stratton, Vice President of Human Resources for Performance Food, whether her participation in the settlement would adversely affect her employment, and Stratton told her it would not. (Id. at ¶ 19.) Canales submitted the claim form. (Id. at ¶ 20.) Canales alleges she was terminated shortly thereafter on November 4, 2016. (Id. at 21.) Plaintiff alleges a variety of wage and labor violations under California law and violations of California's Fair Employment and Housing Act ("FEHA"). (See Compl.)

Defendant removed the action on October 12, 2017. ("Notice of Removal (NOR)," Dkt. No. 1.) Plaintiff filed the instant Motion on November 6, 2017. (Dkt. No. 12.) Defendant opposed the motion on November 13, 2017. ("Opposition," Dkt. No. 13.) Plaintiff replied on November 20, 2017. ("Reply," Dkt. No. 14.)

## II. LEGAL STANDARD

Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013). As such, federal courts only have original jurisdiction over civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332.

Moreover, the Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Jackson v. Specialized Loan Servicing, LLC, 2014 WL 5514142, *6 (C.D. Cal. Oct. 31, 2014). The court must resolve doubts regarding removability in favor of remanding the case to state court. Id.

The district court should first consider whether it is "facially apparent" from the complaint that the jurisdictional amount has been satisfied. See Simmons v. PCR Tech., 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002) (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997). When the complaint does not specify the amount of damages, "the court may examine facts in the complaint and evidence submitted by the parties." Simmons, 209 F. Supp. 2d at 1031. The defendant bears the burden of establishing the amount in controversy at removal. Rodriguez v. AT & T Mobility Servs. LLC, 728 F.3d 975, 981 (9th Cir. 2013). The applicable standard is by a preponderance of the evidence. Id. Therefore, the defendant must offer evidence establishing that it is more likely than not that the amount in controversy exceeds $75,000, exclusive of costs and interest. Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007).

## III. DISCUSSION

The parties agree they are citizens of different states. The amount in controversy is unclear from the face of the Complaint. Therefore, the Court must determine whether Defendant has met its burden of proving by a preponderance of the evidence that the amount in controversy meets the jurisdictional minimum. Plaintiff argues the Court is without subject matter jurisdiction because the amount in controversy does not exceed the $75,000 threshold required for diversity jurisdiction. (Mot. at 1, 3.) Plaintiff seeks compensatory damages, emotional

distress damages, punitive damages, labor code penalties, and attorneys' fees. (See Compl.) The parties dispute the amount in controversy of damages sought.

### A. Settlement Offer

Defendant first argues that Plaintiff's March 2017 settlement demand for $120,000 dollars establishes, on its own, that the amount in controversy requirement is met. (Opp'n at 4.) A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim. Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002). In Cohn, the court held that a settlement letter demanding $100,000 dollars for alleged trademark violations was sufficient evidence the amount in controversy requirement was met. Id. The court noted the plaintiff could have argued the demand was inflated, but rather he consistently maintained his mark was worth than $100,000. Id. However, where a plaintiff takes steps to disavow a damages estimate, the settlement offer, standing alone, is insufficient to establish the requisite amount is met. Vitale v. Celadon Trucking Servs., Inc., 2017 WL 626356, *3 (C.D. Cal. Feb. 15, 2017); see also Walker v. CorePower Yoga, LLC, 2013 WL 2338675, *7 (S.D. Cal. May 28, 2013) (finding settlement letter insufficient to establish amount in controversy where plaintiff disavowed letter stating it was calculated using unsupported and inflated assumptions because at the time the plaintiff had not received initial disclosures or discovery from the defendant).

In her Motion, Plaintiff asserts the settlement demand "rather than an adequate assessment of her claim . . . was an anchoring of the negotiations." (Mot. at 8.) In her Reply, Plaintiff argues that unlike the Cohn plaintiff who could have argued his demand was inflated or not an honest assessment of damages, "Plaintiff did just that in her [Motion]." (Reply at 2-3.) Moreover, similarly to the plaintiff in Walker, Plaintiff made her demand prior to discovery. (Reply at 3.) Although, Plaintiff could certainly have given a more full-throated denial of her settlement offer, the Court concludes Plaintiff did sufficiently disavow the settlement demand as an inaccurate assessment of damages. Therefore, the offer alone is insufficient to establish the amount in controversy, and the Court must still consider the damages asserted.

### B. Compensatory Damages

Canales worked for Performance Food from about June 2007 to November 4, 2016. (Compl. ¶¶ 12, 21.) Canales was placed on medical leave around the end of 2015 and again in the beginning of 2016. (Id. at ¶ 15.) She occasionally missed work due to her disability. (Id.) At the time of her termination, Canales earned $16.30 per hour and $24.45 per overtime hour. (Stratton Decl. ¶ 6, Dkt. No. 1-1; Rodenburgh Decl. ¶ 5, Dkt. No. 13-1.)

Plaintiff argues Defendant has not provided sufficient evidence to establish the amount in controversy regarding her compensatory damages because it only offered the declaration of Brenda Rodenburgh, the Director of Compensation, Benefits and HRIS for Performance Food averring to Plaintiff's employment records. (Reply at 4.) In support of her argument that an HR manager's declaration is insufficient, Plaintiff cites to Garibay v. Archstone Cmtys. LLC, 539

Fed. App'x 763 (9th Cir. 2003) and Ray v. Nordstrom, Inc., 2011 WL 6148668 (C.D. Cal. Dec. 9, 2011). However, Performance Food's evidence does not suffer from the deficiencies present in those cases. In both Garibay and Ray, the courts considered whether the defendants had established the $5 million amount in controversy required for removal under the Class Action Fairness Act of 2005. In Garibay, the court affirmed the district court's determination that the sole declaration of the payroll supervisor was insufficient because while it provided the number of employees, pay periods, and hourly wages, there were too many "speculative and self-serving assumptions about key unknown variables" made in calculating damages. 539 Fed App'x at 764. For example, the defendant assumed every single class member would be entitled to recover labor code penalties for every single pay period, each employee would be entitled to maximum statutory penalty, and each class member was wrongly denied a meal or rest break twice a week, all without any supporting evidence. Id. Similarly, in Ray, the defendant's declaration by its Vice President of Human Resources was insufficient to adequately support the assumptions made in calculating the amount in controversy that some of the hourly employees missed one hour of regular pay and one hour of overtime pay per pay period, or that a different amount of employees missed one meal period and one rest period each pay period. 2011 WL 6148668, at *8-*9. Contrary to Plaintiff's arguments, the deficiency in the defendants' evidence was not that they submitted one declaration, but that the defendants made assumptions about the class members' damages that were unsupported by any evidence. Here, Defendant only submitted evidence regarding Plaintiff's employment records. It did not average across its employees or extrapolate based on other employees' records to make assumptions about Plaintiffs' lost wages. Therefore, the Court concludes Defendant's declarations are not mere speculation and conjecture about Plaintiff's potential damages.

Defendant and Plaintiff dispute whether the calculation for Plaintiff's lost wages between the time of her termination and the date of removal, approximately 49 weeks, should assume full time employment. Plaintiff argues her disability would likely have led to missed work. (Mot. at 3.) Defendant presents evidence that between January 1, 2016 and November 4, 2016, Plaintiff worked an average of 71.23 regular hours and 19.423 overtime hours (for a total of 90.653 hours) per bi-weekly pay period. (Rodenburgh Decl. ¶ 5.) The Court concludes Defendant has provided sufficient evidence to estimate Plaintiff's lost wages at a rate of $16.30 per hour, for 35 regular hours per week, and $24.45 per hour for 9.5 hours of overtime per week. Thus, for the 49 week period from Plaintiff's termination to the date of removal, the amount in controversy for wages was about $ 39,300 dollars. Defendant also provides evidence Plaintiff received benefits totaling $163.35 per bi-weekly period in 2016, and $184.57 per bi-weekly period in 2017, in addition to an annual STAR contribution of $1,050.76 in 2016 and $1,623.42 in 2017. (Rodenburgh Decl. ¶ 4.) Plaintiff's total benefits over the 49 week period would have been approximately $5,870 dollars.[1]

---

[1] STAR contribution calculated as $1050.76/52 = $20.21 per week * 8 weeks = $161.68 plus $1623.42/52 = $31.22 * 41 weeks = $1,260.02 for a total of $1,441.70. Benefits calculated as $163.35 * 4 periods + $184.57 *20.5 periods = $4,437.09.

Plaintiff also argues Defendant fails to provide any evidence that she is seeking the entire lost wage amount, as she could have offset or mitigated her damages. (Mot. at 3.) The Court would have considered such relevant evidence had Plaintiff presented any evidence that her amount of potential lost wages would be reduced. See Lamke v. Sunstate Equip. Co., 319 F. Supp. 2d 1029, 1033 (N.D. Cal. 2004) (holding that in order to determine the amount in controversy, a court may have to consider facts regarding mitigation of damages under the preponderance of evidence test); see also Melendez v. HMS Host Family Restaurants, Inc., 2011 WL 3760058, *3 (C.D. Cal. Aug. 25, 2011) (reducing the amount in controversy regarding the plaintiff's past lost wages by the disability benefits she demonstrated she received). Plaintiff's evidence of the amount totaling her disability benefits reduced the amount in controversy regarding her past lost wages). Since Plaintiff has not presented any such evidence, the Court finds that potential mitigation or offsets should not be included in the amount in controversy calculation. Therefore, the Court finds the amount in controversy for compensatory damages amounts to approximately $45,170 dollars.

**C. Emotional Distress Damages**

Plaintiff seeks emotional distress damages, but does not allege a specific amount. (Compl. at 16.) The Court considers emotional distress damages when calculating the amount in controversy. See Simmons, 209 F. Supp. 2d at 1034. When the amount the plaintiff seeks is unspecified, the defendant may cite to jury verdicts in analogous cases. Cain v. Hartford Life & Accident Ins. Co., 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012).

Defendant cites to various wage and hour and FEHA discrimination cases demonstrating that emotional distress awards have ranged from $100,000 to $700,000. (Opp'n at 13; NOR at 9-10.) The cited cases involve wrongful termination, retaliation, and failure to accommodate claims, as well as wage and hour claims for failing to allow rest periods or pay proper wages. Here, Plaintiff alleges FEHA violations, disability discrimination, and wage and hour claims. (See Compl.) However, the Court agrees with Plaintiff that the cases must be factually similar to warrant comparison, not just contain similar claims. (Reply at 6.) Other than reciting the causes of action or making superficial comparisons of the claims' elements, Defendant has failed to show how the majority of its cited cases are analogous to the case at hand.

One of Defendant's cited cases Colucci v. T-Mobile USA, Inc., 2017 WL 4265980 (Cal. Super. Ct. Aug 30, 2017), serves as an extreme guidepost. In Colucci, the plaintiff alleged FEHA violations for disability discrimination and wage and hour violations, similarly to Plaintiff. Id. The Colucci plaintiff suffered several months of harassment and unfair treatment by his supervisor after informing his supervisor he could not be transferred to a mall kiosk due to his agoraphobia. Id. A few days after the plaintiff complained about his supervisor and went on leave due to the stress related to his supervisor's conduct, the plaintiff's employment was terminated. Id. The jury awarded $130,272 in past lost wages and $700,000 in "other compensatory" damages. Id. While the facts are generally similar, the Court finds the Colucci award represents an exorbitant estimate, given it is significantly higher than the other cited awards, and Plaintiff has not alleged any harassment, let alone months-long harassment. However, Defendant asserts only that the cited cases demonstrate the minimum amount in

controversy for emotional distress damages is $25,000. (Opp'n at 14.) Thus, the Court finds it plausible that Plaintiff could obtain emotional distress damages of at least $25,000. See Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005) (finding no clear error in district court's conclusion that emotional distress damages in FEHA action would add at least an additional $25,000 to plaintiff's claim); Plata v. Target Corp., 2016 WL 6237798, *3 (C.D. Cal. Oct. 25, 2016) (finding it possible that plaintiff could obtain $25,000 in emotional distress damages for a wrongful termination claim where plaintiff had $0 estimated economic losses).

### D. Punitive Damages

Plaintiff also seeks an unspecified amount of punitive damages. Some of Plaintiff's claims arise under FEHA, which allows for an award of punitive damages. Punitive damages are a part of the amount in controversy calculation. See Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001). To establish punitive damages, the defendant may argue amounts awarded in analogous cases. Surber v. Reliance Nat. Indem. Co., 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000).

Defendant provides several employment discrimination cases in which plaintiffs were awarded punitive damages for discrimination and/or wage and hour violations. (Opp'n at 15-16.) Plaintiff argues Defendant has not properly analogized the cited cases to the facts at hand. (Reply at 6.) The Court agrees. As with the cited cases for emotional distress damages, Defendant claims it has provided sufficient evidence of similar cases because the causes of action are the same. However, the cases must present factually analogous authority to enable the Court to reasonably estimate the amount of damages that could be awarded here. Defendant's cases do not do so, and the Court is unable to rely on them to determine the amount in controversy. Accordingly, Defendant has failed to establish by a preponderance of the evidence that any punitive damages should be considered.

### E. Labor Code Penalties

Defendant estimates the California Labor Code statutory penalties to result in damages of $14,362.[2] (NOR at 15-16.) Plaintiff does not dispute these figures. (Mot. at 4.) The Court finds the amount in controversy is $14,362 for labor code penalties.

### F. Attorneys' Fees

Plaintiff also seeks recovery of attorneys' fees. (Compl. at 16.) This Court takes the position that when calculating attorneys' fees to establish jurisdiction, "the only fees that can be considered are those incurred as of the date of removal." See Faulkner v. Astro-Med, Inc., 1999 U.S. Dist. WL 820198, *9 (N.D. Cal. Oct. 4, 1999) (citing Miranti v. Lee, 3 F.3d 925, 928 (5th

---

[2] Defendant calculates $10,000 for a violation of Cal. Lab. Code § 98.6, $450 for wage statement violations (1 pay period * $50 + 4 pay periods * $100), and $3,912 for waiting time penalties ($16.30 * 8 hours per day * 30 days). (NOR at 15–16.)

Cir. 1993)). The reasonableness of attorneys' fees, when such fees are "unascertainable on the fact of the complaint, can be calculated by looking to other attorney's fees awards in similar cases." Castle v. Laboratory Corp. of Am., 2017 WL 2111591, *4 (C.D. Cal. May 15, 2017).

Defendant calculated Plaintiff's attorneys' fees through trial to be $150,000. (Opp'n at 20.) However, the Court considers attorneys' fees through the time of removal. Plaintiff's counsel bills at $600 per hour, but Defendant provides no estimate of the amount of hours Plaintiff's counsel expended through the time of removal. Defendant cites to the Court's case, Threadgill v. Mclane/Suneast, Inc., 2015 WL 114203, *7 (C.D. Cal. Jan. 8, 2015), for the proposition that $8,000 is a reasonable amount of attorneys' fees through removal. However, in that case, the plaintiff had "stated that his attorneys' fees [were] at least $8,000.000. . . ." Id. Here, Plaintiff has made no such admissions or statements. Defendants provide no other evidence of Plaintiff's incurred fees. Therefore, the Court does not include any attorneys' fees in the amount in controversy calculation.

## IV. CONCLUSION

In sum, the Court finds Defendant has established the amount in controversy is about $84,532,[3] which exceeds the jurisdictional minimum. Thus, the Court has subject matter jurisdiction over Plaintiff's claims. The Court DENIES Plaintiff's Motion.

**IT IS SO ORDERED.**

---

[3] Calculated as compensatory damages of $45,170 plus emotional distress damages of $25,000 plus labor code penalties of $14,362.